OPINION OF THE COURT
Joseph Harris, J.
Petitioner moves seeking a judgment pursuant to CPLR article 78 vacating an order of the Industrial Board of Appeals dated December 30, 1991.
Respondents deny the substantive allegations of the petition and assert several affirmative defenses.
FACTS
Respondent Frito-Lay employs route salespersons whose job responsibilities include delivering Frito-Lay snack products to retail stores and collecting payments on behalf of the company from the retail stores for products sold to them.
Each workday morning a route salesperson obtains the amount of product needed to serve his or her customers on that particular day from a Frito-Lay distribution center. Before the route salespersons load their trucks, the amount of product taken is verified by both the route salesperson and a warehouseperson, who then sign an "order invoice” listing the type and quantity of product taken. The value of that product is then recorded as a charge on the route salesperson’s account.
When the route salesperson sells and delivers items to a retail account, (s)he obtains payment in cash or check if it is a "cash account”, or a "charge ticket” if it is a charge account.
At the end of each day, the route salesperson is required to turn in to respondent Frito-Lay all the funds and charge tickets that he or she collected. Because Frito-Lay does not *133 accept cash from their route salespeople, they must give the company either a personal check or a money order representing cash that has been collected. The route salespeople also submit a daily report documenting their sales.
At the end of each 20-day working period, each route salesperson receives a "250” report from respondent Frito-Lay detailing all sales transactions for that period. The 250 report shows the value of property taken from the warehouse as "charges” and payments to the company, charge tickets and unsold products returned as "credits.”
If the charges exceed the credits, the route salesperson is notified that the account is short. If, after a review of the salesperson’s records it is determined that the salesperson has failed to turn in all of the funds that the salesperson’s records indicate were collected, the salesperson is required to pay to respondent Frito-Lay the amount of the shortage, or be subject to discharge.
On June 9, 1989, the petitioner issued an "Order To Comply” to respondent Frito-Lay, finding Frito-Lay in violation of Labor Law § 193 for its practice of requiring route salespersons to make payments to the company for shortages in their accounts.
Frito-Lay appealed the petitioner’s order to the Industrial Board of Appeals (IBA). On April 26, 1990, a hearing was held before the IBA.
On December 30, 1991, the IBA issued a resolution of decision finding the petitioner’s order to be unreasonable, a violation of the National Labor Relations Act (29 USC § 151 et seq.) as an improper interference with the collective bargaining process, and revoking petitioner’s order to comply in all respects.
Petitioner asserts that the IBA’s holding that Labor Law § 193 does not prohibit Frito-Lay’s requirement that route salespersons reimburse the company for cash shortages in their accounts is erroneous as a matter of law, without a rational basis, and not supported by substantial evidence. Petitioner also contends that there is no rational basis for the IBA’s holding that application of Labor Law § 193 in this case would violate the National Labor Relations Act (supra) as an improper interference with the collective bargaining process.
SCOPE OF REVIEW
CPLR 7804 (g) provides that if the "substantial evidence” question is raised: "the court shall first dispose of such other *134 objections as could terminate the proceeding, including but not limited to lack of jurisdiction, statute of limitations and res judicata, without reaching the substantial evidence issue. If the determination of the other objections does not terminate the proceeding, the court shall make an order directing that it be transferred for disposition to a term of the appellate division.”
ISSUES
Pursuant to CPLR 7804 (g), this court will address the following questions: (1) whether the IBA’s holding that Labor Law § 193 does not prohibit Frito-Lay’s requirement that route salespersons reimburse the company for cash shortages in their accounts, is erroneous as a matter of law; and (2) whether the IBA’s holding that the application of Labor Law § 193 is prohibited as a violation of the National Labor Relations Act (supra) and an improper interference with the collective bargaining process, is erroneous as a matter of law.
ANALYSIS
Labor Law § 193 provides, in relevant part, as follows:
"1. No employer shall make any deduction from the wages of an employee, except deductions which:
"a. are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency; or
"b. are expressly authorized in writing by the employee and are for the benefit of the employee; provided that such authorization is kept on file on the employer’s premises. Such authorized deductions shall be limited to payments for insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor organization, and similar payments for the benefit of the employee.
"2. No employer shall * * * make any charge against wages, or require an employee to make any payment by separate transaction unless such charge or payment is permitted as a deduction from wages under the provisions of subdivision one of this section. ” (Emphasis added.)
The deductions at issue herein are not made in accordance *135 with the provisions of any law, rule or regulation issued by a governmental agency. (See, Labor Law § 193 [1] [a].) Moreover, said deductions are neither authorized in writing by the employee (except as they are a part of a collective bargaining agreement), but they are certainly not for the benefit of the employee, nor are they one of the purposes specifically enumerated in section 193 for which such deductions are permitted. (See, Labor Law § 193 [1] [b].)
In this case the respondent employer Frito-Lay required its employee salespeople to make payments to it by a transaction separate from the payment of the employees’ wages notwithstanding the fact that such payments are not permitted as deductions from wages under the provisions of Labor Law § 193 (1) (a) or (b). In short, the respondent employer Frito-Lay did precisely that which is prohibited by Labor Law § 193 (2).
In enacting the National Labor Relations Act (NLRA), Congress preempted only the collective bargaining process; it did not intend to disturb State laws that set minimum labor standards but were unrelated to the collective bargaining or self-organization process. When a State law establishes a minimal employment standard not inconsistent with the NLRA’s general goals, it conflicts with none of the NLRA’s purposes. (Metropolitan Life Ins. Co. v Massachusetts, 471 US 724 [1985].) Such is the case here.
Minimum State labor standards neither encourage nor discourage the collective bargaining process that is the gravamen of the NLRA. The NLRA is not concerned with the substance of labor standards; that is the prerogative of the parties to the bargaining agreement, subject to the prerogative of the individual States in establishing minimal labor standards dictated by their public policy. Minimal substantive State labor standards have nothing but the most indirect effect on the right of self-organization and collective bargaining that is the goal of the NLRA in preventing labor unrest.
Labor Law § 193 deals solely with minimum State labor standards; it applies to union and nonunion employees equally, providing workers with the basic protection, determined by their State’s public policy, that they will receive their wages free from deductions imposed by employers that do not benefit the employees. Said section, neither encourages nor discourages the self-organization or collective bargaining process that is the goal, function, and purpose of the NLRA; *136 thus the subject matter of Labor Law § 193 is not preempted by the NLRA, and is a proper subject for State action.
CONCLUSION
Accordingly, the IBA’s determination that Labor Law § 193 does not prohibit Frito-Lay’s requirement that route salespersons reimburse the company for shortages in their accounts is affected by an error of law and is arbitrary and capricious.
The IBA’s determination that the subject matter of Labor Law § 193 is preempted by Federal law, to wit, the National Labor Relations Act, and that the application of Labor Law § 193 is an improper interference with the collective bargaining process established by the National Labor Relations Act (supra) is affected by an error of law and is arbitrary and capricious.
Petition brought by petitioner is in all respects granted and the order of the Industrial Board of Appeals, dated December 30, 1991, is vacated.